Filed 10/24/25  Marriage of Hart CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of MELINDA and JASON HART. | A169769 |
| MELINDA HART,<br>        Appellant,<br>v.<br>JASON HART,<br>        Respondent. | (Alameda County<br>Super. Ct. No. RF06274704) |

Melinda Hart appeals from an order denying her request for an award of child support for the period March 1, 2012, to September 27, 2019.  She contends the court misinterpreted her prior agreement with Jason Hart and allowed Jason to reduce his child support payments in a manner inconsistent with statutory requirements.  For convenience as the parties share the same last name—and intending no disrespect—we refer to the parties by their first names.

Jason filed a motion for sanctions on the basis that Melinda's appeal is frivolous.  We affirm the trial court's order, but we reject Jason's request for sanctions.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Melinda and Jason married in 2003 and had two children, born in 2004 and 2006. Approximately four months after the birth of their second child, Jason petitioned to dissolve the marriage.

In March 2007, Melinda and Jason, both represented by counsel, stipulated to a judgment that provided for total child support payments in the amount of $10,000 per month for the period March 1, 2007, through February 28, 2012. As of March 1, 2012, any child support "shall be by agreement of the parties or as ordered by a court of appropriate jurisdiction."

In January 2009, the court ordered an amendment to the stipulated judgment based on a new written stipulation by the parties, who were again represented by counsel. The 2009 stipulation clarified that at the time of the original judgment, all the following were true: "(1) The parties were fully informed of their rights concerning child support. [¶] (2) The Judgment was agreed upon without coercion or duress of any kind. [¶] (3) The Judgment as stipulated is in the best interests of the minor children involved. [¶] (4) The needs of the minor children were adequately met by the stipulated amount. [¶] (5) The right to support has not, at any time, prior to or since the entry of Judgment on March 22, 2007, been assigned to the county pursuant to Section 11477 of the Welfare and Institutions Code and no public assistance application is pending." The order specified that the parties entered into this stipulation to "bring the [prior judgment] into compliance with [Family Code section] 4065."

In May 2012, approximately two months after the $10,000 per month child support ended, Jason began paying Melinda only $5,000 per month. Melinda did not file any request for an order on the issue of child support for over seven years. On September 27, 2019, Melinda sought a child support

2

order awarding ongoing child support and child support payments retroactive to March 1, 2012, along with attorney's fees. In that 2019 request for order, Melinda acknowledged the "previous order expired by its terms" but the reduced "informal amount [Jason] had been paying" was insufficient to meet the children's needs. While Melinda accepted such payments between May 2012 and September 2019, the record indicates she sent e-mails to Jason stating the $5,000 amount was inadequate to meet the children's needs.

In response to Melinda's 2019 request, Jason filed a separate request for an order vacating Melinda's request and confirming Australia had jurisdiction over child support.

Following a December 2019 hearing, the court retained jurisdiction over the issue of child support, ordered Jason to pay Melinda $5,000 per month in interim child support, reserved jurisdiction over the question of retroactive child support back to March 1, 2012, and ordered that Jason pay Melinda's attorney's fees. Jason appealed the trial court's retention of jurisdiction over the child support matter and award of attorney's fees; we affirmed. (*Hart v. Hart* (Aug. 31, 2022, A159519) [nonpub. opn.].)

Following remittitur, Jason sought to modify the interim child support order because the oldest child had reached majority. Melinda opposed the request and asserted Jason "has unilaterally . . . violated the child support orders."

Following a hearing on the matter, the court declined to retroactively consider child support payments for the period March 1, 2012, to September 27, 2019: " 'The Court finds that the judgment indicated that . . . Petitioner was to pay child support until February 28th of 2012 in the amount of $10,000. The judgment further stated that any future child support would be based on an agreement between the parties or further court order, none of

3

which happened[.]  Respondent made no request to raise the issue of child support between March 1st, 2012, and September 27th, 2019—over seven years—during which time Petitioner indicated that he was paying $5,000.  Respondent did not object to that.  It appears that the parties had some sort of informal agreement.  Based on that, the first time Respondent raises the issue of child support is in her RFO dated September 27th, 2019.  The Court is not going to retroactively award child support prior to that date.' "  The court ordered that the interim child support order remain in effect and set the remaining matters for trial.

Melinda subsequently filed a notice of appeal.

## DISCUSSION

Melinda challenges the trial court's denial of her request for retroactive child support for the period March 2012 to September 2019.  Melinda contends that portion of the order must be reversed as the court erroneously interpreted the existing 2007 stipulated judgment and the scope of Jason's past child support obligations.

We review child support orders for abuse of discretion.  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282 (*Cheriton*), superseded by statute on another ground as stated in *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049.)  Under that standard, "we review the trial court's legal conclusions de novo and its factual findings for substantial evidence, and we reverse its application of the law to the facts only if it was arbitrary and capricious."  (*Swan v. Hatchett* (2023) 92 Cal.App.5th 1206, 1215.)  "We cannot substitute our judgment for that of the trial court, but only determine if any judge reasonably could have made such an order."  (*In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128.)

4

## I. Child Support Order

### A. Applicable Law

Each parent bears an "equal responsibility" to support their child. (Fam. Code, § 3900; all undesignated statutory references are to the Family Code.) That duty continues so long as the child remains unmarried, a full-time high school student, and not self-supporting; it terminates upon graduation or the child's nineteenth birthday, whichever occurs first. (§ 3901, subd. (a)(1).)

"[S]ection 4055 sets forth a statewide uniform guideline for determining the appropriate amount of child support." (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183, fn. omitted.) The amount of child support set by the guideline's formula is "presumptively correct," and "only under special circumstances should child support orders fall below the child support mandated by the guideline formula." (§ 4053, subd. (k); see §§ 4052, 4057, subd. (a).)

As applicable here, one such special circumstance arises where the parties stipulate to a different support amount under section 4065. (§ 4057, subd. (b)(1).) But the statute imposes safeguards: the court cannot approve a stipulated support order below the guideline amount unless the parties declare they are fully informed of their rights, the agreement is voluntary, it serves the children's best interests, and the stipulated amount adequately meets the children's needs. (§ 4065, subd. (a).)

### B. Analysis

Melinda argues Jason's reduction of child support payments from $10,000 to $5,000 in May 2012 violated his support obligations under the 2007 stipulated judgment. She first asserts any interpretation of the 2007 stipulated judgment as allowing Jason to terminate child support while the

5

child remains a minor is void as against public policy. She also contends Jason's modification of his child support obligations did not satisfy statutory requirements, Jason failed to demonstrate changed circumstances justifying a reduction, and the parties never reached an informal agreement to modify support.

### 1. Validity of 2007 Stipulated Judgment

As an initial matter, Melinda's interpretation of the 2007 stipulated judgment lacks merit. She appears to argue the judgment is void as against public policy to the extent it allowed Jason to terminate his $10,000 monthly child support obligation as of March 1, 2012, absent a new stipulation or court order. But Melinda never sought to set aside that judgment, and the statutory deadlines for doing so expired long ago. (§ 3691.)

In declining to consider retroactive child support to 2012, the court commented that the parties appeared to have an implied agreement for Jason to pay $5,000 per month in child support. Melinda objects to this statement. We need not reach the question of whether the parties agreed to such child support payments because it is irrelevant to our analysis. The only relevant agreement at issue for that period was the 2007 stipulated judgment. And under the terms of that judgment, the parties agreed there would be no set child support level beginning March 1, 2012, without either a subsequent stipulated judgment or court order.

Her reliance on section 291 fares no better. She invokes that statute to suggest Jason cannot assert laches, but section 291 applies only to judgments owed to the state. (§ 291, subd. (d).) No portion of the stipulated judgment here is owed to the state, rendering the statute inapplicable.

6

## 2. Retroactivity of Any Current Child Support Award

Melinda contends the court erred in not considering an award of retroactive child support for the period May 2012 to September 2019 because the amount paid by Jason—$5,000 per month—did not comply with the guideline formula for such payments.

Jason asserts Melinda "abandoned" her challenge to the issue of retroactivity because she "does not dispute the court's ruling in her opening brief." Not so. To the contrary, Melinda's opening brief directly challenges the court's refusal to consider child support for the period 2012 to 2019.

As explained above, the 2007 stipulated judgment obligated Jason to pay $10,000 per month in child support to March 1, 2012, and expressly provided that future support would be determined by stipulation or court order. Melinda never challenged that judgment, which satisfied the statutory requirements of section 4065.[1] She was on notice of its terms, yet did not pursue a new stipulation or file a request for order before March 2012. And it was incumbent on Melinda to seek prospective modification. (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26 [" 'If a parent feels the amount ordered is too high—or too low—he or she must seek prospective modification.' "].)

---

[1] Section 4065, subdivision (a) provides: "Unless prohibited by applicable federal law, the parties may stipulate to a child support amount subject to approval of the court. However, the court shall not approve a stipulated agreement for child support below the guideline formula amount unless the parties declare all of the following: [¶] (1) They are fully informed of their rights concerning child support. [¶] (2) The order is being agreed to without coercion or duress. [¶] (3) The agreement is in the best interests of the children involved. [¶] (4) The needs of the children will be adequately met by the stipulated amount. [¶] (5) The right to support has not been assigned to the county pursuant to Section 11477 of the Welfare and Institutions Code and no public assistance application is pending."

Instead, Melinda now contends Jason failed to satisfy statutory prerequisites for modifying support.  But Jason was not required to alter the 2007 stipulated judgment; his obligation to pay $10,000 per month simply expired under the terms of that judgment.

Melinda's reliance on *Cheriton*, *supra*, 92 Cal.App.4th 269 is misplaced.  In *Cheriton*, the court ordered the parties to exchange copies of their tax returns annually and revise child support based on any changes in either parent's income utilizing an "authorized computer program and experts if desired." (*Id.* at p. 295.)  The appellate court found this procedure flawed, noting in part that "it circumvents the statutory procedures for modification of child support." (*Id.* at p. 298.)  Specifically, the court explained, "the statutes contemplate that the determinations necessary to support a child support modification will be made by a judge, not simply left in the hands of parties equipped with a computer program.  Thus, 'it would constitute an abuse of discretion for the trial court simply to substitute the use of a computer program for the required consideration and appropriate weighing of the statutory factors.' " (*Ibid.*)

Here, by contrast, the 2007 stipulated judgment directed the parties to either propose a new stipulated judgment or seek a court order, both mechanisms that preserved judicial oversight and consideration of relevant statutory factors.

Neither party sought to modify the 2007 stipulated judgment until Melinda filed her request for order in September 2019.  And, as she concedes, the statutory framework expressly limits any retroactive application to the date of service of the modification request.  (See, e.g., § 3603 [support order "may be modified or terminated at any time except as to an amount that accrued before the date of the filing of the notice of motion or order to show

8

cause to modify or terminate."]; § 3653, subd. (a) ["An order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date."].) Considering these provisions, "a trial court acts 'in excess of the court's jurisdiction' if it modifies support retroactive to any time before the filing of an obligor's modification motion." (*S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 599; see also *Stover v. Bruntz*, *supra*, 12 Cal.App.5th at p. 26 [same].)

Accordingly, the trial court acted well within its authority in rejecting Melinda's request for retroactive support prior to September 27, 2019.

## II.  Motion for Sanctions

In connection with the appeal, Jason filed a motion for sanctions pursuant to California Rules of Court, rule 8.276, asserting the appeal is frivolous under *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, includes irrelevant arguments, and violates the rules of court. These arguments mirror the sanctions request in his brief. He seeks $34,582.80 in attorney's fees as sanctions.

California Rules of Court, rule 8.276(a)(1) authorizes sanctions for a frivolous appeal or one brought solely to cause delay. "An appeal is frivolous 'only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' " (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516.) The former is tested subjectively, the latter objectively. (*Ibid.*) However, sanctions should be used " 'most sparingly to deter only the most egregious conduct,' " and a lack of merit alone does not establish frivolity. (*Id.* at p. 518.)

9

Although Melinda's appeal fails on the merits for the reasons already discussed, it does not meet the stringent standard for frivolousness. Jason unilaterally reduced child support payments under the 2007 stipulated judgment, and the trial court partially rationalized its decision by finding an informal agreement between the parties for such reduced amounts. While Melinda's challenges to these issues ultimately lack legal support, nothing in the record suggests she brought this appeal for an improper motive. Nor has Jason demonstrated that Melinda's reuse of arguments from the prior appeal—without indicating whether those arguments were addressed or resolved in his favor—establishes bad faith. Accordingly, we deny Jason's motion for sanctions.

## DISPOSITION

The order is affirmed. In the interests of justice, the parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

PETROU, J.

WE CONCUR:

FUJISAKI, Acting P. J.

RODRÍGUEZ, J.

A169769 / *In re Marriage of Hart*

11